UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AIX SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MILLENNIUM HOTEL GROUP,<br><br>Defendant. | Civil Action No.: 2:21-cv-11850-MCA-LDW<br><br>**AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND JURY DEMAND** |

Plaintiff, AIX Specialty Insurance Company ("AIX"), by and through its attorneys, Finazzo Cossolini O'Leary Meola & Hager, LLC, by way of Amended Complaint, alleges as follows:

## INTRODUCTION

1. AIX seeks this Court's declaration that an insurance policy issued by AIX to Defendant, Millennium Hotel Group ("Millennium"), bearing Policy Number F1Y-H402696-00, effective November 4, 2020 to November 4, 2021 (the "Policy"), has been validly rescinded and declared void *ab initio* by AIX due to Millennium's material misrepresentation and concealment of material facts in connection with Millennium's procurement of the Policy. AIX also seeks a declaratory judgment that the Policy does not afford coverage to Millennium in connection with a November 19, 2020 fire loss sustained at Millennium's commercial premises.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 2201, and 2202. AIX is a Delaware corporation with its principal place of business in Windsor, Connecticut. Upon information and belief, Millennium is limited liability company organized under the laws of Pennsylvania. At all relevant times, Millennium's sole member was and is Raj

1

Patel, a citizen of New Jersey with a home address in Edison, New Jersey.  Therefore, Millennium is a New Jersey citizen, and there is complete diversity of citizenship between the parties.

3.	The matter in controversy, exclusive of interest and costs, exceeds the sum of seventy-five thousand dollars ($75,000).  An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties.

4.	Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Millennium's sole member resides in this judicial district and conducts business in this judicial district.

## PARTIES

5.	Plaintiff AIX, is a corporation organized and existing under the laws of Delaware with its principal place of business located at 5 Waterside Crossing, Suite 201, Windsor, Connecticut, 06095.  AIX is a surplus lines insurance carrier that provides, *inter alia*, commercial property and liability insurance policies.

6.	Upon information and belief, Millennium is a limited liability company organized under the laws of Pennsylvania.  At all relevant times, Millennium's sole member was and is Raj Patel, a citizen of New Jersey with a home address in Edison, New Jersey.  Therefore, Millennium is a New Jersey citizen.  At all relevant times, Millennium owned and operated a 44-room commercial hotel located at 1208 Walnut Street, Philadelphia, Pennsylvania, more commonly known as the "Rodeway Inn" (hereinafter referred to as the "Hotel").

## GENERAL ALLEGATIONS

### Millennium's lease of the Hotel to the City of Philadelphia for use as the City's primary isolation and quarantine site in connection with the COVID-19 pandemic

7.	On July 2, 2020, Millennium entered into a lease with the City of Philadelphia (the "City") for use of the Hotel as the City's primary isolation and quarantine site in connection with

its response to the COVID-19 pandemic, with an initial lease term through December 31, 2020 (the "Lease").

8. From negotiation of the Lease through its inception and beyond, Millennium knew that the City intended to use the Hotel as an isolation and quarantine site. Indeed, a May 18, 2020 Letter of Intent executed by Millennium indicated in a section entitled "Use of Premises" as follows: "Tenant may operate, use, and occupy the Premises as temporary lodging for persons placed under quarantine and isolation in connection with COVID-19 and any uses ancillary thereto."

9. The Lease similarly contained a "Use of Premises" section, identifying the "Permitted Use" of the Hotel as follows:

> Tenant may operate, use, and occupy the Premises for each of the following purposes or any combination of them: (i) in connection with Tenant's response to the COVID-19 pandemic; (ii) **as temporary housing for persons under quarantine or isolation due as temporary housing for persons who meet the FEMA guidelines for COVID in connection with Tenant's response to the COVID-19 pandemic**; (iii) any lawful uses; and (iv) any and all uses reasonable related to the above.

10. The Lease also included a section entitled "RULES AND REGULATIONS," which states in pertinent part as follows: "Tenant shall abide by any rules and regulations for the Building promulgated by Landlord, together with any alterations, additions or modifications thereof as may from time to time be made by Landlord."

11. The Hotel is a "No Smoking" hotel, and smoking is prohibited in each and every room contained therein.

12. During the Summer of 2020 while the Lease was in effect, representatives of Millennium visited the Hotel on at least one occasion to perform a routine check of the Hotel. The representatives' access to certain areas of the Hotel was restricted because quarantined and/or

infected individuals were housed inside, facts which were known to these authorized representatives of Millennium.

### Millennium's procurement of the Policy from AIX

13. In September 2020, while the Lease was in effect, Millennium sought various insurance quotes for property and liability insurance coverage for the Hotel. Millennium's prior insurance carrier, Chubb Custom Insurance Company, elected not to renew Millennium's policy expiring September 3, 2020.

14. In connection therewith, Millennium's owner, Mr. Raj Patel, informed Millennium's insurance agent, Evergreen Insurance & Risk Management ("Evergreen"), that Millennium leased the Hotel to the City.

15. After receiving this information, AIX's underwriter sought additional information relating to the City's use of the Hotel. The City's use of the Hotel was critical information for AIX to determine whether to insure the Hotel at all, and, if so, calculate an appropriate premium and other policy terms that would be commensurate with – and tailored to – the risk involved.

16. Evergreen subsequently contacted Mr. Patel, indicating that the AIX underwriter asked for additional information as to the City's use of the property.

17. Mr. Patel responded to Evergreen's inquiry simply with: "To house first responders of their staff."

18. Evergreen subsequently relayed this information to AIX's underwriter for consideration of Millennium's efforts to procure insurance for the Hotel from AIX.

19. Neither Mr. Patel nor anyone else on Millennium's behalf ever informed AIX or its representatives that the City was using the Hotel as an isolation and quarantine site in connection with the COVID-19 pandemic.

20.     Millennium subsequently submitted a Commercial Insurance Application to AIX on November 4, 2020 (hereinafter the "Application"). Mr. Patel signed the Application on Millennium's behalf.

21.     The Application included the following representation:

> The undersigned is an authorized representative of the applicant and represents that reasonable enquiry has been made to obtain the answers to questions on this application. He/she represents that the answers are true, correct and complete to the best of his/her knowledge.

22.     The Application included a section to indicate whether the property "HAS BEEN DESIGNATED AN HISTORICAL LANDMARK." The check box corresponding to this inquiry was left blank in the signed Application, indicating that the property was not designated as an historical landmark.

23.     Unbeknownst to AIX, the Hotel had in fact been designated an historical landmark in June 2020. Indeed, the Hotel address appears on the Philadelphia Historical Commission's Register of Historic Places with a designation date of June 12, 2020.

24.     At his Examination Under Oath in April 2021, Mr. Patel recalled efforts made by representatives of Millennium to become designated by the City as an historical landmark. He claimed that he simply overlooked the section of the Application as to whether the Hotel had been designated an historical landmark.

25.     In reliance upon the accuracy and completeness of the information provided to AIX during the underwriting process, including but not limited to the information Mr. Patel provided as to the City's use of the Hotel and the information contained in the Application, AIX agreed to provide insurance to Millennium for the Hotel.

26.     The Policy was issued with an effective term of November 4, 2020 to November 4, 2021.

27.     The Policy contains a form entitled Commercial Property Conditions, Form CP 00 90 07 88, which states the following in pertinent part:

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your Interest in the Covered Property; or
4. A claim under this Coverage Part.

**The November 19, 2020 Fire Loss and AIX's claim investigation**

28.     On November 19, 2020, a fire occurred at the Hotel, causing damage to various hotel rooms (the "Loss").

29.     Upon information and belief, City officials determined that the fire was caused by smoking in a prohibited area within the Hotel.

30.     Notice of the Loss was provided to AIX on December 3, 2020. Claim number 19-00784739 was assigned to Millennium's claim relating to the Loss.

31.     AIX representatives conducted inspections relating to the Loss on December 7, 2020, and December 15, 2020.

32.     During AIX's investigation of the Loss, AIX learned for the first time that the City had been using the Hotel as its primary site for isolation and quarantine of individuals infected with the SARS-CoV-2 virus. This was contrary to the information that Millennium provided to AIX's underwriter during the Policy underwriting process, in which Millennium represented that the City was utilizing the Hotel "to house first responders."

33.     AIX also learned for the first time that the Hotel was included on the City's Register

6

of Historic Places, with a designation date of June 12, 2020, despite Millennium's omission in its Application as to whether the Hotel was designated an historical landmark.

34. On or about December 29, 2020, AIX issued cancellation notices to Millennium, indicating that the Policy and a general liability policy issued by AIX (policy number L1YH402751) would be cancelled effective January 29, 2021. The notices stated in pertinent part:

> The reason for cancellation is material information regarding the risk was misrepresented and/or non-disclosed to the Company, including but not limited to the use of the premises, the property's status as a historical landmark, and its date of construction. The Company reserves any and all rights it may have with respect to any information regarding the risk which was misrepresented or non-disclosed.

35. AIX ultimately requested the Examination Under Oath of Mr. Patel in furtherance with AIX's investigation of Millennium's claim and in accordance with AIX's rights under the Policy. The Examination Under Oath was conducted via remote videoconference means on April 22, 2021.

36. By letter dated May 27, 2021, AIX informed Millennium that it elected to rescind the Policy as of the date of its issuance based on Millennium's material misrepresentations and omissions in connection with its procurement of the Policy. In a separate letter also dated May 27, 2021, AIX informed Millennium that, in light of AIX's rescission of the Policy, there is no coverage for Millennium's claim.

## FIRST CAUSE OF ACTION

**(Rescission – The Policy is Void Due to Millennium's Material Misrepresentations)**

37. AIX repeats and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

38. Millennium provided knowingly false and/or inaccurate information to AIX in connection with Millennium's procurement of the Policy.

39. The information provided by Millennium constitute material misrepresentations, omissions and/or concealment of material information relating to AIX's procurement of insurance from AIX.

40. These material misrepresentations include but are not limited to Millennium's false representation as to the City's use of the Hotel "to house first responders of [the City's] staff," when in fact Millennium knew that the City intended to use – and was actually using – the Hotel as temporary housing for isolated and quarantined individuals infected with the SARS-CoV-2 virus.

41. Millennium's material misrepresentations also include its failure to indicate in the Application that the Hotel had been designated an historical landmark, where Millennium was aware of the Hotel's status of same.

42. Millennium's material misrepresentations or omissions were actually and reasonably relied upon by AIX in connection with its provision of insurance for the Hotel. Millennium's misrepresentations were material to AIX's acceptance of the risk or the hazard assumed by AIX in issuing the Policy.

43. At no time prior to issuance of the Policy or the Loss did AIX have actual knowledge of the matters concealed and/or misrepresented by Millennium, nor did AIX have constructive knowledge of the matters concealed and/or misrepresented by Millennium.

44. If the true facts had been known to AIX, it would have declined to issue the Policy, or would not have issued the Policy based on the same terms (including but not limited to premium charged and limits of liability).

45. Millennium's material misrepresentations and omissions are violative of the Policy's "CONCEALMENT, MISREPRESENTATION OR FRAUD" provisions of the Policy, as

well as applicable law concerning an insured's material misrepresentations or omissions relating to policy procurement.

46. Based on the foregoing, the Policy is void *ab initio*, entitling AIX to a judgment from this Court that the Policy has been validly rescinded.

## SECOND CAUSE OF ACTION

**(Declaratory Judgment – No Coverage Under the Policy)**

47. AIX repeats and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

48. An actual controversy exists as to whether Millennium is entitled to any insurance proceeds from AIX in connection with the Loss.

49. AIX's denial of Millennium's claim was proper in light of Millennium's material misrepresentations and omissions and AIX's rescission of the Policy.

50. AIX respectfully seeks a judgment from this Honorable Court that AIX has no obligation or duty to provide any coverage for Millennium's claim relating to the Loss.

**WHEREFORE**, Plaintiff AIX Specialty Insurance Company seeks a judgment from this Honorable Court as follows:

1. A declaration that the Policy has been validly rescinded and declared void *ab initio* due to Millennium's material misrepresentations and omissions.

2. A declaration that AIX has no obligation to provide any coverage for any claims asserted by Millennium in connection with the Loss;

3. For costs of suit incurred herein; and,

4. For such other and further relief as the Court deems just and proper.

Dated: June 1, 2021          **FINAZZO COSSOLINI O'LEARY MEOLA & HAGER, LLC**

By:    */s/ Jeremiah L. O'Leary*
       JEREMIAH L. O'LEARY, ESQ.
       67 East Park Place, Suite 901
       Morristown, New Jersey 07960
       (973) 343-4960
       jeremiah.oleary@finazzolaw.com
       *Attorney for Plaintiff,*
       *AIX Specialty Insurance Company*

## **JURY DEMAND**

Plaintiff AIX Specialty Insurance Company hereby demands trial by jury as to all issues so triable.

Dated: June 1, 2021          **FINAZZO COSSOLINI O'LEARY MEOLA & HAGER, LLC**

By:    */s/ Jeremiah L. O'Leary*
       JEREMIAH L. O'LEARY, ESQ.
       67 East Park Place, Suite 901
       Morristown, New Jersey 07960
       (973) 343-4960
       jeremiah.oleary@finazzolaw.com
       *Attorney for Plaintiff,*
       *AIX Specialty Insurance Company*